# September Term, 1943

No. 15,111.

BROWN *v.* MILLER ET AL.
(141 P. [2d] 682)

Decided September 13, 1943.

Mr. M. W. SPAULDING, for plaintiff in error.

Messrs. YEAMAN, GOVE & HUFFMAN, Mr. SHERMAN A. SUTLIFF, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

JULY 25, 1939, plaintiff in error, Ethelbert R. Brown, who was plaintiff below, and to whom we hereinafter refer as plaintiff, filed an action in the district court of Douglas county against Edgar W. Miller and his wife entitled, "Complaint for Dissolution and Accounting of Partnership, and for Damages." After disposition of certain motions, plaintiff filed a bill of particulars. Defendants filed an answer and cross complaint praying for judgment against plaintiff in the sum of $738.99. Trial was to the court which resulted in judgment for defendants on their cross complaint in the sum of $97.12 and costs. Plaintiff seeks reversal.

The circumstances which gave rise to the alleged partnership and consequent litigation may be stated briefly as follows: Prior to October 7, 1935, plaintiff and his brother each owned an undivided one-half interest in a 160-acre mountain ranch located in Douglas county. Both of them were financially involved. Defendant Miller, a colonel in the medical department of the army and his wife, stationed at Fort Riley, Kansas, had visited in the vicinity and concluded they would like to have a place in the mountains. They purchased the half interest owned by plaintiff's brother outright, and also made a deal with plaintiff to take over his interest—he to be retained as manager. In consummation of the deal, several meetings were held in the office of plaintiff's attorney and the following papers were prepared: 1. A warranty deed from plaintiff to defendants of plaintiff's interest. 2. A deed of a life estate in the same interest in the premises from defendants to plaintiff. 3. A deed of trust from plaintiff to defendants of the premises to

secure the payment of a promissory note for $485 payable to defendants—for money used by them in paying plaintiff's debts in that amount. 4. Agreement wherein defendants employed plaintiff as manager of the ranch.

The first three papers were signed in the office of plaintiff's lawyer and were then approved by defendants' attorney who took acknowledgments on the first two papers and made some minor changes in the agreement concerning the management of the ranch; however, the agreement of management was not signed. No acknowledgment on the deed of trust was taken. The offices of both attorneys were located in Denver. The deal was closed just before dinner time and following the meal the parties drove to Littleton where Miller paid all of plaintiff's bills except one for $148.58 which will be mentioned later. All of the papers were turned over to Miller, who had the two deeds and the deed of trust recorded the following day, October 8th. At the time of recording, the deed of trust recited an acknowledgment by "Arch Curtis, County Clerk" as of October 7th. A short time thereafter plaintiff's lawyer sent two copies of the agreement for management to plaintiff, who claims he signed them both and sent them to Miller and that he was to send one back.

The particular paragraph in this agreement which caused the misunderstanding, provided that plaintiff was "to be the manager of said real and personal property at a monthly salary of Fifty Dollars ($50) per month, one half of which amount, or twenty-five dollars ($25) per month, is to be paid to said party of the second part [plaintiff] by said parties of the first part on the tenth day of each month hereafter, and the remaining one-half thereof is to be paid to said party of the second part by his doing in a satisfactory manner his portion of the necessary work as set forth herein * * *." The agreement further states that he is "to look after said business in an honest and efficient manner and to give the best of his skill and attention thereto and that he

will at all times keep a book of accounts and make proper entries therein of all sales, receipts, purchases, payments, transactions and business included in or incidental to said employment."

Attorneys for both parties stated that this clause had been discussed and given particular attention by defendant's attorney, but plaintiff says he did not understand it until after some correspondence with Miller who explained it to him at length. Plaintiff in one of his letters subsequently admitted he understood it, and thereafter defendant Miller sent plaintiff $25 a month, beginning with January, 1936. Plaintiff's contention was that the $25 a month represented by his labor was to be applied toward payment of the note. Because of this misunderstanding, plaintiff lost all interest in the ranch and left it. Most of the property was stolen, the hay rotted and some of the stock died. Plaintiff claims his reason for leaving was because of a bodily injury he had received, and he testified that he hired another man for $20 a month to take his place. Defendants say that this arrangement was made without their knowledge and approval, and that the man who was hired brought some stock with him that ran loose on the place and about ruined it.

No direct payments were ever made on the $485 note, and in 1939 defendants foreclosed the deed of trust. Plaintiff waited until his period of redemption was about to expire before bringing this suit, in which, among other things, he prayed that the foreclosure proceedings be enjoined until this suit was determined. A temporary restraining order was issued, but the trial court dissolved it in its judgment; however, it is still pending by virtue of the action here.

Plaintiff's cause of action is predicated upon an alleged partnership; the alleged fraud of defendant in representing that he would finance the ranch and make a profitable summer resort out of the place, and alleged grounds for cancellation of the deed of trust. Defend-

ants' answer consisted principally of a general denial, and their cross complaint was grounded upon loss of crops and stock and failure of plaintiff to account for monies received.

While plaintiff in error specifies thirteen points upon which he relies for reversal, they may well be summarized in four, viz.: 1. The court's failure to declare the relationship a partnership and adjudicate accordingly; 2. its refusal to cancel the deed of trust; 3. it erred in disregarding the fact that there was a partial failure of consideration for the note; 4. the findings and judgment were not supported by the greater weight of evidence.

1. While there was some evidence of partnership in the letters introduced, and an allegation in defendants' answer that the parties were to share profits and losses, all the documents definitely indicate that a partnership was not intended, at least not until plaintiff performed according to the executed agreement. It is not contended by plaintiff that there was any attempt to comply with the partnership law (chapter 123, '35 C.S.A.), and mere joint ownership of land does not establish a partnership even though profits are shared, and no inference of profits as evidence of partnership "shall be drawn if such profits were received in payment; (a) As a debt by installments or otherwise, (b) As wages of an employee or rent to a landlord, (c) * * *, (d) As interest on a loan, though the amount of payment vary with the profits of the business. (e) As the consideration for the sale of a good-will of a business or other property by installments or otherwise." '35 C.S.A., c. 123, §7. Even assuming under plaintiff's theory that the $25 a month he claimed he earned by virtue of his alleged services was to be credited on the $485 note, it is no evidence of a partnership. Since there was ample evidence to support the court's finding that no partnership existed, there was no need for an attempted adjudication on that theory.

2. There was no error in the refusal of the court

to cancel the deed of trust which was introduced in evidence without objection. While it is true plaintiff gave defendants a warranty deed to the premises, the defendants reconveyed to him a life estate and it is a reasonable deduction that defendants took back the deed of trust to protect themselves on the note and to wipe out the life estate in case of nonpayment of the note. Plaintiff says he did not know that he gave the deed of trust, that no security was asked for, and he relies on the fact that the trust deed was not acknowledged. There is testimony showing that plaintiff did not appear before Arch Curtis who signed the purported acknowledgment on October 7th. As to this contention, the record shows that the trust deed was prepared by plaintiff's lawyer and that it was among the papers that were gone over by the parties in his office on October 7th. Plaintiff admits that the signature thereon is his own.

Unless there is an express statutory provision to the contrary, a deed of real estate to be effective as a conveyance as between grantor and grantee need not be acknowledged, and execution and delivery of such an instrument, notwithstanding the lack of acknowledgment, binds the parties and their privies. *American Nat. Bank v. Silverthorn,* 87 Colo. 345, 348, 287 Pac. 641.

3. It is true that defendants Miller did not pay directly an item of $148.58, representing one of plaintiff's bills. It was partially paid by the sale of hay in which Miller admittedly had a one-half interest and plaintiff was given credit for the balance in the court's adjudication of accounts on the bill of particulars and the cross complaint. Plaintiff specifically admits that all the other bills were paid, hence the entire consideration of the note is accounted for.

4. As to the weight of the evidence not sustaining the judgment, we note that the gravamen of the complaint was fraud. Clearly there was no proof of it. Undoubtedly there was hope that a paying business could be established with the property as a summer re-

sort, but that Miller made any false representations to that effect is not shown, and plaintiff stated he relied upon his attorney, not upon any representations made by Miller. There is no evidence that plaintiff made any serious attempt to keep the ranch in any kind of shape or "to give the best of his skill and attention" thereto, even before he was injured. He says the original account book was destroyed and the one he offered in evidence had a number of pages missing; the items appearing therein were all written at one time from memory. Out of personal property of the value of several hundred dollars that was on the place on October 7, 1935, only items worth about twenty dollars remained a year later, and this undoubtedly was taken into consideration by the court in settling the accounts.

No error is assigned on the admission of any of the evidence, which preponderantly, if not overwhelmingly, supports the judgment, which accordingly is affirmed.

MR. JUSTICE KNOUS not participating.