**TURKEY CREEK, LLC, Plaintiff–Appellee and Counterclaim Defendant,**

v.

**Joseph G. ROSANIA, Trustee of the Bankruptcy Estate of Glenn T. Miller, Defendant and Third–Party Plaintiff–Appellant,**

v.

**James K. ARONSTEIN and Michael M. Page, Third–Party Defendants–Appellees,**

and

**Gold Fields Mining Company, Defendant and Third–Party Defendant–Appellee.**

No. 96CA1720.

Colorado Court of Appeals, Div. I.

March 5, 1998.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

Netzorg & McKeever, P.C., Gordon W. Netzorg, J. Nicholas McKeever, Jr., Cecil E. Morris, Denver, for Plaintiff–Appellee and Counterclaim Defendant and Third–Party Defendants–Appellees.

Weinman, Cohen & Niebrugge, P.C., Jeffrey A. Weinman, William A. Richey, Denver,

for Joseph G. Rosania, Trustee of the Bankruptcy Estate of Glenn T. Miller.

Smith & Lillie, LLC, Michael W. Lillie, Englewood, for Defendant and Third–Party Plaintiff–Appellant Glenn T. Miller.

Holland & Hart, LLP, Scott S. Barker, Craig Stewart, Eric L. Hilty, Lisa Z. Joiner, Denver, for Defendant and Third–Party Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this quiet title and foreclosure action, defendant, Joseph G. Rosania, Trustee of the Bankruptcy Estate of Glenn T. Miller (Miller), appeals from the partial summary judgment entered against him and in favor of plaintiff, Turkey Creek, LLC (Turkey Creek), and from the judgment entered by the trial court after a bench trial granting foreclosure in favor of Turkey Creek and denying his cross-claims against third-party defendants, James K. Aronstein, Michael M. Page (the lawyers), and Gold Fields Mining Company (Gold Fields). We affirm.

New Jersey Zinc Company (New Jersey Zinc), a subsidiary of Paramount Communications (Paramount), owned a large parcel of property in Eagle County. In 1981, New Jersey Zinc entered into a joint venture with Gold Fields to explore and mine the property. Gold Fields was represented in this venture by Parcel, Talesnick, Meyer & Schwartz and its successors (law firm), two partners of which were third-party defendants James Aronstein and Michael Page.

In 1983, New Jersey Zinc sold the entire property, subject to Gold Fields' interest, to Miller for cash and promissory notes secured by deeds of trust. Gold Fields and Miller entered into a new joint venture agreement.

Gold Fields completed its exploration in 1984 and completed reclamation of the area in 1986. After 1986, Gold Fields and Miller exchanged a series of letters which discussed the termination of the joint venture.

In 1990, Turkey Creek, managed by the lawyers, began purchasing tax liens on certain parcels located on the property, and, in 1993, Turkey Creek purchased Gold Fields' interest in the property. That same year, Turkey Creek acquired from Paramount a deed of trust and judgment Paramount had obtained against Miller for his failure to pay the notes securing the 1983 transaction.

Turkey Creek filed this quiet title and foreclosure action in 1994. In his answer, Miller asserted a counterclaim against Turkey Creek and a third-party claim against the lawyers, alleging that they had breached a fiduciary duty to him by engaging in undisclosed self-dealing adverse to his interests. He also asserted a third-party claim against Gold Fields, alleging that it had breached the joint venture agreement by selling its property interest to Turkey Creek without giving him an opportunity to exercise his preferential right to purchase as provided for in the agreement.

Miller also challenged the validity of the treasurer's deeds issued to Turkey Creek based on the county treasurer's failure to comply strictly with statutory requirements pertaining to notice.

Before trial, the court entered partial summary judgment against Miller on his breach of fiduciary duty claim, ruling that the lawyers did not represent him or the joint venture at the time of the challenged transactions.

At the subsequent bench trial, the court entered extensive findings of fact and conclusions of law, including a finding that the joint venture had terminated no later than 1986, and the conclusion that thereafter no fiduciary duty existed merely because the parties owned undivided interests in the same property. The court further found that on all but one of the treasurer's deeds, notice was given timely. Accordingly, the court ruled against Miller on his third-party claims and cross-claims and entered judgment in favor of Turkey Creek. This appeal followed.

I.

■ As a threshold matter, we address and deny Turkey Creek's motion to dismiss the appeal for noncompliance with C.A.R. 3(d).

■ A notice of appeal is designed to put the opposing party on notice that an appeal has been filed and to identify the trial court

action from which the appeal has been taken. *People v. Bost,* 770 P.2d 1209 (Colo.1989). "If the prevailing party could not be misled as to the intention to appeal or as to the judgment from which the appeal is to be taken, any technical defect in the notice of appeal is harmless." *Widener v. District Court,* 200 Colo. 398, 401, 615 P.2d 33, 34 (1980).

Here, Miller, in his notice of appeal, failed to list as parties to the appeal the individual lawyers or Gold Fields in the caption. However, there was compliance with all other provisions of C.A.R. 3(d). Specifically, the notice named those parties and their attorneys, listed the claims against them, and certified that a copy of the notice of appeal had been sent to their attorneys. Moreover, Turkey Creek, the lawyers, and Gold Fields all submitted briefs in support of their arguments on appeal. Any defect in the notice of appeal, therefore, was harmless.

## II.

■ Miller first contends that the trial court erred in refusing to set aside Gold Fields' transfer of its joint venture property interests or to award damages for Gold Fields' breach of the joint venture agreement by having made the transfer without granting him his right of first refusal. We are not persuaded.

■ The substantive law of partnerships applies to joint ventures. The dissolution of a partnership does not automatically terminate the existence of the partnership. Instead, the partnership continues until the winding up of partnership affairs is completed. *Hooper v. Yoder,* 737 P.2d 852 (Colo. 1987).

■ The rights of a party to a joint venture agreement are subject to any agreements between the parties of the venture. *See* § 7–60–118(1), C.R.S.1997.

We agree, although on different grounds, with the trial court that Gold Fields had no contractual obligation to Miller at the time of the transaction at issue here. *See Gonzalez v. Yancey,* 939 P.2d 525 (Colo.App.1997).

As pertinent here, the joint venture agreement between Miller and Gold Fields contained provisions denominated as termination procedures, which provided for the dissolution and winding up of the joint venture's business affairs. These termination provisions set forth procedures for winding up the joint venture, including provisions for distributing the proceeds of the sale of the joint assets and for paying the debts, expenses, and other costs of winding up. Thus, in effect, this part of the agreement governed the dissolution of the joint venture, leading to its termination. Section 7–60–130, C.R.S. 1997 (dissolution is not termination).

In particular, the agreement governing the dissolution and winding up procedures excluded as assets held by the joint venture the parties' respective undivided interests in the real property at issue here. Instead, it specifically provided that:

[A]t termination [dissolution] ... the Parties shall retain their undivided interests (if any) in the Property as tenants in common, equal to their respective Participating Interests therein, and such undivided interest (if any) shall cease being subject to the terms and conditions of this Agreement.

Accordingly, the plain language of the agreement, at the time of the dissolution and the subsequent winding up of the joint venture, released the property interests held by each party from the terms of the original joint venture agreement. Thus, Gold Fields' transfer of its property interests did not violate the joint venture agreement, and the trial court did not err in refusing to set aside the transfer or to award Miller damages.

## III.

Miller next contends that the trial court erred in entering partial summary judgment for the lawyers on the ground that no attorney-client relationship existed between himself and them. He argues that because the lawyers' work for Gold Fields also benefited the joint venture, and because he reimbursed Gold Fields for certain attorney fees by transferring interests in the joint venture property to it, the lawyers necessarily represented the joint venture and also him as a

member of the joint venture. In the alternative, Miller argues that Gold Fields, as an agent of the joint venture, created an attorney-client relationship between the joint venture and himself by hiring the lawyers. Therefore, he contends, the lawyers also became agents of the joint venture and himself, and the trial court erred in entering judgment against him at trial.

██ Summary judgment is a drastic remedy to be granted only upon a clear showing that no genuine issue as to any material fact exists. In determining whether summary judgment is proper, a court must give a non-moving party the benefit of all favorable inferences that reasonably might be drawn from the undisputed facts. All doubts must be resolved against the moving party. *Peterson v. Halsted,* 829 P.2d 373 (Colo.1992).

██ An appellate court's review of a grant of summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo. 1995).

██ The formation of a relationship between an attorney and his or her client is based upon contract, which may be either express or implied by the conduct of the parties. *Klancke v. Smith,* 829 P.2d 464 (Colo.App.1991). If such relationship is to be established by the conduct of the parties, there must be a showing that a person sought and received legal advice from the attorney concerning the legal consequences of the person's past or contemplated action. *People v. Morley,* 725 P.2d 510 (Colo.1986).

██ An agent is one who acts for or in place of another. The existence of an agency relationship turns on the intentions of the parties and is evidenced by their acts. *Gorsich v. Double B Trading Co.,* 893 P.2d 1357 (Colo.App.1994).

██ Here, it was undisputed that the law firm and the lawyers were retained by Gold Fields to represent only it and not the joint venture. Although, as Miller points out, the attorneys did title work for Gold Fields, the joint venture did not own the property upon which the title work was performed. New Jersey Zinc initially owned the property. In order to protect its interests in acquiring the property as it performed the work under the terms of the joint venture, Gold Fields hired the lawyers to issue title opinions to assure itself that New Jersey Zinc was the legal owner of the property and, as such, could transfer clear title in the property to Gold Fields. Hiring the lawyers to perform the title work on the property directly benefited Gold Fields, and to the extent that any benefit may have accrued to the joint venture, such benefit was incidental.

Further, there was no showing by the lawyers that they represented or intended to represent the joint venture merely because they represented Gold Fields. And, based on the evidence presented at trial, the trial court determined that no agency relationship existed between Miller and the lawyers.

Miller has asserted no other facts that would demonstrate the existence of an attorney-client relationship between the lawyers and the joint venture. Accordingly, the lawyers did not represent the joint venture or Miller and, therefore, were not their agents.

██ Furthermore, even if we were to assume that the lawyers did represent the joint venture, the fact that an attorney represents a partnership does not, standing alone, create an attorney-client relationship with each of the partners, for that transaction or otherwise. *See Zimmerman v. Kamphausen,* —— P.2d —— (Colo.App. No. 96CA0946, February 19, 1997).

In *Zimmerman,* a division of this court determined that there was no indication by the law firm or its attorneys that they were representing the partner individually as well as the partnership in a transaction. In the absence of other factors, the court concluded that no attorney-client relationship existed between the partner and the attorneys.

Here, the lawyers gave no indication to Miller that they were representing him individually because of the work they were doing for Gold Fields. Indeed, in contrast to the attorneys in *Zimmerman v. Kamphausen, supra,* who sent letters to the partner requesting his signature on certain documents, the lawyers here had no contact with Miller

at any time during their work for Gold Fields. Accordingly, we conclude that, under these circumstances, Miller has failed to demonstrate the existence of an attorney-client relationship.

Nor does the fact that a non-client pays attorney fees on behalf of the client create such relationship. *International Tele–Marine Corp. v. Malone & Associates, Inc.*, 845 F.Supp. 1427 (D.Colo.1994) (payment of attorney fees by non-client on behalf of another does not, of itself, create attorney-client relationship). *See generally* R. Mallen & J. Smith, *Legal Malpractice* § 7.2 (3d ed.1989).

Furthermore, the affidavit of Miller's expert witness, presenting a legal opinion that an attorney-client relationship existed between Miller and the lawyers, does not, in itself, create the existence of a material fact. *See Kirkpatrick v. Colorado Farm Bureau Mutual Insurance Co.*, 839 P.2d 514 (Colo. App.1992).

Thus, the trial court properly determined that no attorney-client relationship existed between the lawyers and either Miller or the joint venture. Accordingly, the court did not err in denying Miller's motion for partial summary judgment and in entering judgment against him at trial.

### IV.

In the alternative, Miller argues that even if no attorney-client relationship exists, the lawyers breached a fiduciary duty owed to him either as 1) a tenant in common with Turkey Creek, 2) a non-client third party, or 3) a member of a joint venture in which a duty was owed to him by the other party thereby creating a duty of care in the lawyers. We disagree.

Here, the trial court determined, and we agree, that Miller presented no evidence that would demonstrate the existence of a fiduciary or confidential relationship between him and the lawyers under any of the circumstances asserted by him. Whether a legal duty is owed a party and the scope of such duty are questions of law for a court to decide. *Glover v. Southard*, 894 P.2d 21 (Colo.App.1994).

Before there can be a breach of a fiduciary duty, a fiduciary relationship or a confidential relationship must exist. *Vikell Investors Pacific, Inc. v. Kip Hampden, Ltd.*, 946 P.2d 589 (Colo.App.1997).

A fiduciary duty arises between parties through a relationship of trust, confidence, and reliance. Such duty arises when one party has a high degree of control over the property or subject matter of another, or when the benefiting party places a high level of trust and confidence in the fiduciary to look out for the beneficiary's best interest. *Bailey v. Allstate Insurance Co.*, 844 P.2d 1336 (Colo.App.1992).

A confidential relationship may give rise to a fiduciary duty if one party justifiably reposes a special trust and confidence in another so that ordinary vigilance and care is relaxed. Such relationship must have been established before the date of the transaction giving rise to the claim. *Nicholson v. Ash*, 800 P.2d 1352 (Colo.App.1990).

### A.

Although tenants in common have a good faith obligation in their dealings in regard to jointly owned property, unless other facts show that one party reposed special confidence in the other, a fiduciary relationship does not exist between the tenants. *Meyer v. Schwartz*, 638 P.2d 821 (Colo.App. 1981).

Here, Miller alleges a fiduciary duty on the basis of the tenant in common relationship between him and Turkey Creek. However, he has presented no evidence that the tenancy in common created any reliance by him on Turkey Creek or the lawyers that would give rise to a fiduciary relationship. *See Jennings v. Bradfield*, 169 Colo. 146, 454 P.2d 81 (1969)(in absence of other agreement, tenants in common owe no greater legal obligation to each other than to strangers).

### B.

Partners in a partnership owe each other the highest duty of loyalty. *Hooper v. Yoder, supra.* However, an attorney

representing one partner does not assume thereby the same duty of care to the others. As a general rule, an attorney is not liable to a third party absent conduct that is fraudulent or malicious. *See Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver,* 892 P.2d 230 (Colo.1995); *Glover v. Southard, supra* (citing public policy reasons for strictly limiting an attorney's duty of care to third parties).

Here, although Miller and Gold Fields were partners in a joint venture and Gold Fields had the authority to hire those persons necessary to achieve the purposes of the joint venture, it did not hire the lawyers to represent the joint venture. As discussed, the lawyers did not represent the joint venture or Miller. And, following trial, the court found no fraud or malice by the lawyers.

At best, even if, as Miller appears to argue, the joint venture was a third-party beneficiary of the lawyers' work for Gold Fields, nevertheless, in the absence of evidence of willful or wanton conduct, fraud, malice, or other circumstances giving rise to a duty of care, the lawyers are not liable to Miller. *See Glover v. Southard, supra* (declining to impose a duty of care in favor of beneficiaries named in testamentary documents drafted by attorney); *In re Estate of Brooks,* 42 Colo. App. 333, 596 P.2d 1220 (1979)(trustee's attorney not liable to alleged beneficiary for breach of trust). *See also Holmes v. Young,* 885 P.2d 305 (Colo.App.1994).

### C.

▌ Miller further argues that, as a member of the joint venture with Gold Fields, he has a right to enforce a claim of a breach of loyalty to Gold Fields by its attorneys. Insofar as Miller seems to assert the right to "stand in Gold Fields' shoes" in pursuing this claim, we disagree.

Every action is to be prosecuted in the name of the real party in interest. C.R.C.P. 17(a).

▌ Although a partner in a partnership is a real party in interest and may maintain an action on behalf of the partnership and the partners for those matters concerning the partnership, *Erickson v. Oberlohr,* 749 P.2d 996 (Colo.App.1987), here, Miller is not asserting claims on behalf of himself or the partnership. Instead, he is asking the court to allow him to litigate a claim that might exist between Gold Fields and its attorneys. This he has no authority to do. Thus, we conclude that the trial court did not err in determining that the lawyers did not owe a duty of care to him.

### V.

Lastly, Miller challenges the validity of the tax deeds held by Turkey Creek.

The relevant provision of the tax lien statute, § 39–11–128(1), C.R.S.1997, provides:

> Before any purchaser ... of a tax lien on any land ... sold for taxes ... is entitled to a deed for the land ... he shall make request upon the treasurer, who shall then comply with the following:
>
> (a) The treasurer shall serve ... a notice of such purchase on every person in actual possession or occupancy of such land, lot, or claim, and also on the person in whose name the same was taxed ... and upon all persons having an interest or title of record in or to the same....
>
> (b) ... the treasurer shall publish such notice, three times, at intervals of one week, in some ... newspaper published in such county, not more than five months nor less than three months before the time at which the tax deed may issue....

▌ The purpose of § 39–11–128(1) is to forbid the issuance of a treasurer's deed unless notice is given to persons with an interest in the property, especially to those persons with a right to redeem. *Swofford v. Colorado National Bank,* 628 P.2d 184 (Colo. App.1981). The requirements of § 39–11–128(1) have been determined to be jurisdictional, and less than full compliance with the statute may invalidate a treasurer's deed. *See Concord Corp. v. Huff,* 144 Colo. 72, 355 P.2d 73 (1960). The determination whether the statutory requirements have been sufficiently satisfied is a question for the trier of fact to decide. *Siddoway v. Ainge,* 189 Colo. 173, 538 P.2d 110 (1975).

Miller, while conceding that he had actual notice of the issuance of the treasurer's deeds, contends that the tax deeds issued by the county treasurer to Turkey Creek are void for failure to follow strictly the publication requirements under § 39–11–128(1)(b), C.R.S.1997. However, he has no standing to raise this contention.

In determining whether a party has standing to maintain an action, a court must ascertain whether the party seeking relief has alleged an injury-in-fact as a result of the challenged action and whether such injury is to a legally protected or cognizable interest based on a constitutional, statutory, or other recognized source. *Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286 (Colo.1992).

Although Miller contends that the cases he has relied on require that the tax deeds here be declared void, we note that in each such case, the person who sought relief suffered actual injury to a legally protected interest. *See e.g., Swofford v. Colorado National Bank, supra.* Specifically, in these cases, the tax deeds were declared void because the persons challenging the deeds had a legal interest in the property subject to sale and, therefore, were entitled to receive personal notice under § 39–11–128(1)(a), C.R.S.1997. Because they did not receive personal notice, service of notice was invalid and violated their due process rights to receive such notice.

Here, however, the trial court found that Miller had actual notice by the county treasurer of the applications for treasurer's deeds and the issuance of tax deeds. Miller does not dispute that he had the opportunity to redeem the tax certificates prior to the tax deeds being issued and did not avail himself of such opportunity. Therefore, Miller has not demonstrated any injury to his right to notice under § 39–21–128(1)(a). *See Johnson v. Dunkel*, 132 Colo. 383, 288 P.2d 343 (1955) (person who had actual notice of application for tax deed is in no position to claim that deed is void for failure to serve personal notice).

Similarly, Miller has no standing to claim that the deeds should be declared void because of alleged defects in the publication requirements under § 39–11–128(1)(b). He has demonstrated no injury whatsoever to himself as a result of any such alleged defects under that portion of the statute.

Accordingly, Miller lacks standing to contest the validity of the tax deeds either under § 39–11–128(1)(a) or § 39–11–128(1)(b). Thus, under these circumstances, the trial court did not err in refusing to void the tax deeds.

The judgments are affirmed.

METZGER and ROY, JJ., concur.