Lief ADAMS; Lewis Caricato; Bette Caricato; Lloyd Herren; Elizabeth McGill; James McGill; Suzanne Strickland; Gayeski Capital Equities, LLC, a Colorado limited liability company; Milton W. Fonay Trust; SabaColo, LLC; and Brighton Farms, LLP, a Colorado general partnership, Plaintiffs–Appellants,

v.

LAND SERVICES, INC., a Colorado corporation; Douglas A. Barnes, individually; and Barnes Family Foundation, Defendants–Appellees.

No. 07CA0848.

Colorado Court of Appeals, Div. V.

July 10, 2008.

Rehearing Denied Sept. 4, 2008.

Alperstein & Covell, P.C., Donald W. Alperstein, Andrea L. Benson, Denver, Colorado, for Plaintiffs–Appellants.

Balaban & Levinson, P.C., Kenneth L. Levinson, Cherami Ball Costigan, Bernadette J. Wasilik, Denver, Colorado, for Defendants–Appellees Land Services, Inc. and Douglas A. Barnes.

Moore Law Firm, P.C., Theresa M. Moore, Denver, Colorado, for Defendant–Appellee Barnes Family Foundation.

Opinion by Judge VOGT.

Plaintiffs, Lief Adams, Lewis Caricato, Bette Caricato, Lloyd Herren, Elizabeth McGill, James McGill, Suzanne Strickland, Gayeski Capital Equities, LLC, The Milton W. Fonay Trust, SabaColo, LLC, and Brighton Farms, LLP, appeal the trial court's summary judgments dismissing their claims against defendants, Land Services, Inc. (LSI), Douglas A. Barnes, and The Barnes Family Foundation (BFF). We affirm the judgment of dismissal based on lack of standing and therefore do not reach the merits of the trial court's earlier dismissal of plaintiffs' civil theft and false representation claims.

Plaintiff Brighton Farms, LLP, was formed in 1972 for the purpose of acquiring and holding for appreciation a parcel of land in Adams County, Colorado. (Although it retains the "LLP" designation in its name, Brighton Farms has been a general partnership since its limited liability status was revoked for failure to file a periodic report in 1999.) The other plaintiffs are general partners owning some 47% of the Brighton Farms partnership interests.

In 1998, Brighton Farms hired LSI and Barnes to manage and find a purchaser for the Adams County property. In 2004, Brighton Farms and LSI entered into a "platting agreement"—approved by the Brighton Farms partners holding a majority of the partnership interests, but opposed by some of the plaintiffs in this case—which provided that LSI would undertake various services to increase the value of the property, in exchange for which it would receive 40% of any net sales proceeds above the property's then-current market value of $24,000 per acre.

Brighton Farms subsequently received and accepted an offer to purchase the property for approximately $43,560 per acre. Upon sale of the property, LSI received its real estate broker's commission pursuant to the parties' listing agreement and its 40% share of the increased property value pursuant to the platting agreement. The balance of the net sale proceeds was distributed to the Brighton Farms partners, and the partnership was dissolved.

Plaintiffs then filed this action, alleging that LSI and Barnes had procured the platting agreement by fraud and that they had failed to perform the services that would have entitled them to compensation under the agreement. Plaintiffs asserted claims against LSI and Barnes for civil theft, breach of fiduciary duty, unjust enrichment, deceit by nondisclosure, false representation, money had and received, and breach of contract. They also sought a declaratory judgment and an accounting. BFF was added as a defendant on an additional equitable claim based on its alleged status as a donee or gratuitous transferee of property belonging to plaintiffs.

All the parties filed motions for summary judgment. The trial court entered summary judgment for defendants on plaintiffs' civil theft and false representation claims. Thereafter, it ruled that plaintiffs lacked standing to bring any of their claims, either as a derivative action on behalf of the Brighton Farms partnership or as individuals, and it therefore dismissed all the remaining claims on this basis.

## I. Standing

Plaintiffs contend the trial court erred in ruling that they had no right to file a derivative action on behalf of Brighton Farms and lacked standing to sue as individuals. We disagree.

Standing is a threshold issue that must be satisfied before a case may be decided on the merits. To establish standing, a plaintiff must show that he or she has suffered an injury-in-fact to a legally protected interest. *Ainscough v. Owens,* 90 P.3d 851, 855 (Colo.2004); *see Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). Because standing is a question of law, we review the trial court's resolution of the issue de novo. *Ainscough,* 90 P.3d at 856.

### A. Plaintiffs' Right to Sue on Behalf of Brighton Farms

We first address whether plaintiffs, as general partners holding a minority of the inter-

ests in a general partnership, may bring this action on behalf of the partnership. The trial court concluded that this action was "clearly a derivative action," and that Colorado law did not afford general partners the derivative action remedy available to corporate shareholders pursuant to C.R.C.P. 23.1 and to limited partners pursuant to section 7–62–1001, C.R.S.2007. Plaintiffs agree that general partnership law does not recognize derivative actions and state that they make "no pretense of asserting claims derivatively"; rather, they argue that they may sue in the name of and on behalf of Brighton Farms because of their status as co-owners of partnership property and agents of the partnership. We are not persuaded.

### 1. Applicable Legal Principles

Plaintiffs' rights and status as general partners of Brighton Farms are determined under Colorado's Uniform Partnership Law (UPL), §§ 7–60–101 to—154, C.R.S.2007, which governs here because Brighton Farms was formed before 1998. *See* § 7–64–1205(1)(a), C.R.S.2007.

The UPL provides certain remedies to individual general partners who are dissatisfied with actions taken by the partnership. Section 7–60–122, C.R.S.2007, entitles any partner to "a formal account as to partnership affairs" in certain enumerated circumstances, and section 7–60–132(1), C.R.S.2007, permits a partner to seek a judicial dissolution of the partnership where another partner has been guilty of conduct prejudicing the partnership business or has otherwise acted in a manner as to render a dissolution equitable. *See Mann v. Friden*, 132 Colo. 273, 280, 287 P.2d 961, 964 (1955) (although general partner had right to accounting, dissolution, and contribution, and had various rights on dissolution, statute did not afford him a right to receivership).

However, the UPL includes no provision analogous to C.R.C.P. 23.1 or section 7–62–1001 that would give a general partner the right to bring a derivative action. In *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 708 F.Supp. 1193, 1195 (D.Colo.1989), relied on by the trial court here, the federal district court cited the availability of other remedies for general partners under the UPL, as well as the lack of any statutory provision permitting derivative actions on behalf of general partnerships, in concluding that, "in Colorado, a general partner has no capacity or standing to bring a derivative action on behalf of a general partnership."

■ There appear to be no Colorado cases, other than *Kline*, addressing the issue presented here. The general rule in other jurisdictions is that a partner cannot maintain a suit to enforce a partnership claim if a majority of the partners do not agree to do so. *See Coast v. Hunt Oil Co.*, 195 F.2d 870, 871 (5th Cir.1952) (under Louisiana law, partner owning 49% interest in partnership could not maintain action on behalf of partnership where 51% interest owner refused to participate); *Hauer v. Bankers Trust New York Corp.*, 509 F.Supp. 168, 177 (E.D.Wis.1981) (where majority of managing partners of real estate development partnership elected not to pursue any cause of action partnership might have had against its lender, former managing partner could not assert such claims on behalf of partnership against lender), *aff'd sub nom. Hauer v. BT Advisors, Inc.*, 671 F.2d 1020 (7th Cir.1982); *Lane v. Krein*, 297 S.C. 133, 375 S.E.2d 351, 352 (App.1988) (general partner with minority interest could not sue on claim alleging conversion of partnership property where majority of general partners had not authorized suit); *see generally* Alan R. Bromberg, *Enforcement of Partnership Rights—Who Sues for the Partnership?*, 70 Neb. L.Rev. 1 (1991); Helen Hubbard, Comment, *Alternative Remedies in Minority Partners' Suit on Partnership Causes of Action*, 39 Sw. L.J. 1021 (1986).

Some courts have recognized an exception to the rule set forth above, and would permit individual general partners to sue on behalf of the partnership when there are "exceptional circumstances" rendering other available remedies inadequate. In the case most frequently cited for that proposition, *Cates v. International Telephone & Telegraph Corp.*, 756 F.2d 1161 (5th Cir.1985), the Fifth Circuit explained the circumstances that might permit a general partner to bring an action

in the name of the partnership or in the partner's own name:

We do not hold that Texas law would necessarily allow a derivative action on the part of a minority partner or an owner of a partnership interest. What we do hold is that in a proper case—one where the controlling partners, for improper, ulterior motives and not because of what they in good faith believe to be the best interests of the partnership, decline to sue on a valid, valuable partnership cause of action which it is advantageous to the partnership to pursue—Texas law would afford *some* remedy to the minority partner or partnership interest owner *other than merely* a damage or accounting suit against the controlling partners, at least where the latter would not be reasonably effective to protect the substantial rights of the minority.

*Id.* at 1178 (emphasis in original); *see also* Bromberg, *supra,* at 12–14.

### 2. Application to this Case

■ There is no indication in the record here that the partners owning a majority of the interests in Brighton Farms authorized plaintiffs to bring this action. Thus, under the general rule set forth in *Coast, Hauer,* and *Lane,* with which we agree, plaintiffs may not sue on behalf of Brighton Farms.

We further conclude that this case does not present the sort of "exceptional circumstances" that, under *Cates,* would permit plaintiffs to assert claims on behalf of the partnership.

The rights and duties of partners under the UPL are subject to any agreement among them. *See* § 7–60–118(1), C.R.S.2007; *Turkey Creek, LLC v. Rosania,* 953 P.2d 1306, 1310 (Colo.App.1998). Under the Brighton Farms partnership agreement, management of the day-to-day business of the partnership was delegated to a management committee consisting of a maximum of five managing general partners. The managing general partners could execute any instruments necessary to effectuate the purposes of the agreement and were authorized to act on behalf of Brighton Farms on partnership business matters, including the conveyance of partnership property.

■ It is undisputed that the transactions with defendants at issue in this case were authorized and approved by the managing general partners, after the objections of the minority partners had been considered. Thus, the minority partners who disagreed with the managing general partners' actions were nevertheless bound by them. *See Black v. First Federal Savings & Loan Ass'n,* 830 P.2d 1103, 1110–11 (Colo.App. 1992) (as agents of partnerships, general partners bind partnership when they act within the scope of their authority), *aff'd sub nom. La Plata Medical Center Associates, Ltd. v. United Bank,* 857 P.2d 410 (Colo. 1993); *Ball v. Carlson,* 641 P.2d 303, 305 (Colo.App.1981) ("the act of a partner in selling real estate, when in the apparent scope of the partnership's business, is binding upon the partnership and the other partners").

Further, the record discloses no basis for concluding that the decision to enter into the challenged transactions with defendants was anything other than a good faith business decision on the part of the managing general partners. Thus, even those jurisdictions that permit minority general partners to sue in the name of the partnership in exceptional circumstances would not allow them to do so here. *See Cates,* 756 F.2d at 1177–78 (recognizing right of partners to sue on "a valid, valuable partnership cause of action" in some cases where controlling partners have refused to do so for improper, ulterior motives, but not in cases where controlling partners acted in what they in good faith believed to be in the best interests of the partnership).

We are not persuaded to reach a contrary conclusion based on plaintiffs' argument that, under section 7–60–109 of the UPL, they are agents of the partnership and, as such, may assert claims on behalf of the partnership. As set forth above, the agency principle in 7–60–109 is subject to the terms of the partnership agreement, in which plaintiffs delegated to the managing general partners the right to enter into the transactions with defendants. Further, even assuming plaintiffs were agents of Brighton Farms for some purposes, they were not authorized to bring this action as Brighton Farms' agents where

their principal did not authorize such an action. *See Lane,* 375 S.E.2d at 352; *see also Willey v. Mayer,* 876 P.2d 1260, 1264 (Colo. 1994).

We are similarly unpersuaded by plaintiffs' reliance on Colorado cases such as *Turkey Creek,* 953 P.2d 1306; *Stratman v. Dietrich,* 765 P.2d 603 (Colo.App.1988); and *Erickson v. Oberlohr,* 749 P.2d 996 (Colo.App.1987), which have recognized that partners may sue in certain circumstances without joining the partnership or the other partners as parties. These cases addressed whether partners or partnerships were proper or indispensable parties. *See* C.R.C.P. 17, 19. Neither these cases nor *Watt, Tieder, Killian & Hoffar v. United States Fidelity & Guaranty Co.,* 847 P.2d 170 (Colo.App.1992), upon which plaintiffs also rely, involved a situation in which minority partners purported to act on behalf of the partnership, without the authorization of the partnership, to challenge a transaction validly entered into by the partnership.

In sum, we are aware of no theory that would allow plaintiffs, minority partners acting without the authorization of the partnership or of the majority partners, to seek redress on behalf of Brighton Farms for injuries allegedly resulting from Brighton Farms' transactions with defendants. Thus, because plaintiffs could not show that they suffered an injury-in-fact to a legally protected interest, the trial court properly concluded that they lacked standing to bring this action on behalf of Brighton Farms. *See Kline,* 708 F.Supp. at 1195 (general partner lacks standing to bring derivative action on behalf of general partnership); *see also Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242, 249 (Tex.App.2005) ("[W]ithout a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate.... Only the person whose primary legal right has been breached may seek redress for an injury"; thus, plaintiffs' action to set aside transaction between their partnership and third party would be dismissed for lack of standing).

### B. Plaintiffs' Standing to Sue as Individuals

█ We also reject plaintiffs' related contention that, as co-owners of partnership property pursuant to section 7–60–125, C.R.S.2007, they had standing to sue as individuals for injury to their individual interests in the partnership property.

Under the Brighton Farms partnership agreement, the Adams County parcel was partnership property, titled in the name of the partnership. Plaintiffs' complaint alleges that Brighton Farms sustained losses in connection with the sale of that property because of defendants' actions and inactions, but it does not allege that any individual plaintiff suffered unique losses not shared by the other partners. In such circumstances, claims for redress belong to the partnership and cannot be asserted by a partner in his or her individual capacity. As explained by the Fifth Circuit in *Cates,* in rejecting the minority partner's contention that he could assert individual claims distinct from partnership claims:

> [T]he record conclusively shows that the agreements sued on were between the partnerships and the defendants, that Cates individually was not a party thereto, and that the businesses which were the subject matter of the agreements were the businesses of the partnerships, not of Cates individually. Accordingly, any claims for damages which Cates suffered by reason of diminution in value of his partnership interest, or his share of partnership income, ... by reason of breach of such agreements ... are in effect subsumed within the causes of action of the partnerships and do not afford Cates ... a separate, individual cause of action.

756 F.2d at 1181 (footnote omitted); *see also Hauer,* 509 F.Supp. at 174–75 (individual partner could not claim recovery for injuries to partnership; if lender acted improperly toward partnership, it was partnership's exclusive right to redress any wrongs suffered as a result of such improper conduct); *Nauslar,* 170 S.W.3d at 250–51 (rejecting plaintiff's contention that he had standing to sue individually because he was personally aggrieved and suffered direct injury from defendants' actions, which allegedly diminished the value of plaintiff's ownership interest in the partnership).

The principle applied in these cases is consistent with Colorado cases recognizing that corporate shareholders may not assert individual claims based on wrongs to the corporation where they did not suffer injuries separate and distinct from the injury to the corporation or the other shareholders. *See River Management Corp. v. Lodge Properties, Inc.,* 829 P.2d 398, 403–04 (Colo.App. 1991); *Nicholson v. Ash,* 800 P.2d 1352, 1356–57 (Colo.App.1990); *see also Caley Investments I v. Lowe Family Associates, Ltd.,* 754 P.2d 793, 795 (Colo.App.1988) (limited partners lacked standing to sue as individuals where any injuries they might suffer would be indirect, resulting from a diminution in value of their partnership investment). Although the right of general partners to sue individually has been recognized where the partners could be personally liable on the transaction at issue, *see, e.g., Monks v. Hemphill,* 121 Colo. 1, 4, 212 P.2d 1004, 1005 (1949); *E & A Associates v. First National Bank,* 899 P.2d 243, 246 (Colo.App.1994), this is not such a case.

Thus, the trial court did not err in concluding that plaintiffs also lacked standing to assert their claims as individuals.

## II. Attorney Fees

BFF requests an award of its appellate attorney fees, asserting that plaintiffs' contentions are frivolous. We conclude that they are not frivolous and therefore deny the request. *See* C.A.R. 38(d); *Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925, 934–35 (Colo.1993).

LSI and Barnes also request appellate attorney fees based on the prevailing party provision of the parties' listing agreement. *See Hartman v. Freedman,* 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979) (where attorney fees are due under a contractual provision, those fees include the reasonable costs of defending the judgment on appeal); *Wheeler v. T.L. Roofing, Inc.,* 74 P.3d 499, 506 (Colo.App.2003) (same). However, they concede that that provision is not included in the record on appeal. We therefore do not rule on their request. If defendants renew their request in the trial court, that court shall determine their entitlement to the re-quested fees and, if fees are to be awarded, the amount of such fees. *See* C.A.R. 39.5.

The judgment is affirmed.

Judge GRAHAM and Judge LICHTENSTEIN concur.