20CA0987 GSI v Hudson 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA0987 Adams County District Court No. 19CV41 Honorable Robert W. Kiesnowski, Jr., Judge GSI Enterprises, Inc., Plaintiff-Appellant, v. Hudson Real Estate Co., Defendant-Appellee. ORDER AFFIRMED Division VII Opinion by JUDGE GROVE Navarro and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Fortis Law Partners LLC, David Olsky, Henry M. Baskerville, Denver, Colorado, for Plaintiff-Appellant Volant Law LLC, Tobin D. Kern, Englewood, Colorado, for Defendant-Appellee 
1 ¶ 1 Plaintiff GSI Enterprises, Inc., appeals the district court’s judgment dismissing its complaint against defendant Hudson Real Estate Co. for lack of standing. We affirm. I. Background ¶ 2 We draw the following facts from GSI’s amended complaint. ¶ 3 In the summer of 1992, GSI, along with co-investors Carlos Saurini and Christopher Erskine, purchased the Riviera apartment complex located in Northglenn. Each co-owner took a minority interest in the complex matching their contribution to the purchase price: GSI held 42.5%; Saurini held 42.5%; and Erskine held 15%. The co-owners agreed that after collection of rents, payment of operating expenses, maintenance, repair, and management fees, they would split the Riviera’s net revenue in proportion to their ownership interests. ¶ 4 In August 2008, the co-owners agreed to hire Hudson as their property manager for Riviera. Each co-owner signed the management agreement, but they were collectively identified as “Owner” in the document. According to the agreement, Hudson was to pay the net profit from the operation of the apartment complex to each co-owner based on their respective ownership percentages. 
2 ¶ 5 In 2014, mold was discovered in some of the buildings at the Riviera. Hudson supervised an initial remediation of this issue, but an additional inspection uncovered more problems. GSI, Saurini, and Erskine could not agree on how Hudson should proceed regarding the necessity, scope, method, and cost of remediation. The relationship among the co-owners became so highly dysfunctional that Erskine requested, and the co-owners were granted, a court-appointed receiver. After the co-owners stipulated to the sale of the apartment complex, the receiver sold the property and distributed the net proceeds to them in proportion to their ownership interests. ¶ 6 GSI then sued Saurini, Erskine, and Hudson, alleging that both Saurini and Erskine’s lack of investment in, and Hudson’s mismanagement of, the Riviera had reduced its fair market value. In its original complaint, GSI asserted multiple claims for relief against Saurini and Erskine, including breach of partnership agreement and breach of fiduciary duty to the partnership. GSI specifically alleged the formation and existence of a partnership in its filing. 
3 ¶ 7 In response, Hudson filed a motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), asserting that GSI lacked standing to sue because (1) any injuries that it alleged belonged to the partnership; (2) GSI was a minority member of the partnership and was not authorized by the other members of the partnership to sue; and (3) GSI did not assert unique claims that it could assert separate from the partnership. ¶ 8 GSI then amended its complaint, dropped Saurini and Erskine as defendants, and removed allegations that the co-owners had been members of a partnership. However, the underlying facts regarding GSI, Saurini, and Erskine’s investment in the business of the Riviera remained largely the same. Hudson again moved to dismiss. Concluding that the factual allegations in the amended complaint established the existence of a partnership, the district court granted the motion because the existence of a partnership deprived GSI of standing to sue in an individual capacity. II. Standard of Review ¶ 9 In considering a district court’s dismissal for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), we review the district court’s legal conclusions de novo and its factual determinations, if 
4 any, for clear error. See Monez v. Reinertson, 140 P.3d 242, 244 (Colo. App. 2006). Where, as here, there are no disputed issues of material fact, we review de novo a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Tulips Invs., LLC v. State ex rel. Suthers, 2015 CO 1, ¶ 11. III. Legal Standard ¶ 10 Standing is a jurisdictional prerequisite to every case. Espinosa v. Perez, 165 P.3d 770, 772 (Colo. App. 2006). At the district court level, the plaintiff bears the burden of proving jurisdiction. City of Boulder v. Pub. Serv. Co., 2018 CO 59, ¶ 14. ¶ 11 C.R.C.P. 12(b)(1) governs motions to dismiss based on a lack of subject matter jurisdiction. Asphalt Specialties, Co. v. City of Commerce City, 218 P.3d 741, 744 (Colo. App. 2009). In reviewing an order dismissing a complaint under Rule 12(b)(1), we examine the substance of the claim based on the facts alleged and the relief requested. City of Aspen v. Kinder Morgan, Inc., 143 P.3d 1076, 1078 (Colo. App. 2006). IV. Analysis ¶ 12 The sole question before us is whether GSI has standing to bring a claim against Hudson. We conclude that GSI does not have 
5 standing to bring its claim because the facts that it alleged in the amended complaint, if proven, would establish that it was a minority member of a general partnership, and GSI did not receive consent from a majority of the general partners to initiate the lawsuit. A. General Partnership ¶ 13 As a threshold matter, we consider whether the facts in the amended complaint, if proven, would establish that GSI is a member of a general partnership, or whether, as GSI contends, they merely demonstrate the existence of a tenancy in common. ¶ 14 Because GSI, Saurini, and Erskine acquired Riviera in 1992, the Uniform Partnership Law (UPL), § 7-60-101 to -154, C.R.S. 2020, applies. See Adams v. Land Servs., Inc., 194 P.3d 429, 431 (Colo. App. 2008) (explaining that the UPL applies to partnerships formed prior to 1998); see also § 7-64-1205(1)(a), C.R.S. 2020 (explaining that the Colorado Uniform Partnership Act applies to partnerships formed after January 1, 1998).1 The UPL defines a 1 Without providing much detail in their briefing, both GSI and Hudson concede that the UPL governs our analysis. 
6 partnership as “an association of two or more persons to carry on, as co-owners, a business for profit . . . .” § 7-60-106(1), C.R.S. 2020; Reid v. Pyle, 51 P.3d 1064, 1066 (Colo. 2002). ¶ 15 Ordinarily, a partnership is voluntarily formed by an agreement between two or more persons or entities. Yoder v. Hooper, 695 P.2d 1182, 1187 (Colo. App. 1984), aff’d, 737 P.2d 852 (Colo. 1987). But even in the absence of a formal agreement or other evidence detailing the express intentions of the parties, a partnership may be legally inferred based on the conduct of the parties involved. Id. ¶ 16 Profit sharing is the “‘primary attribute’ of, and a ‘necessary condition’ for, a partnership.” Colo. Performance Corp. v. Mariposa Assocs., 754 P.2d 401, 405 (Colo. App. 1987) (quoting Judson Adams Crane & Alan Bromberg, Law of Partnership 66 (1968)). An agreement to pool resources into a business and share the profits and losses of that business is generally sufficient to establish that a partnership has been formed. See In re S & D Foods, Inc., 144 B.R. 121, 158 (Bankr. D. Colo. 1992) (“[A partnership is] defined as an express or implied contract between two or more persons to place 
7 their money, skill, effects or labor into a business, and to share the profit and losses. No express agreement is necessary.”). ¶ 17 Based on the facts alleged in the amended complaint, we agree with the district court’s conclusion that GSI entered a partnership with Saurini and Erskine. ¶ 18 As required by the definition of partnership in the statute, GSI entered into business with Saurini and Erskine (by associating with “two or more persons”) as co-owners of Riviera (“a business for profit”). § 7-60-106(1). The parties pooled resources into a business (the Riviera); actively managed it by hiring (and firing) a string of management companies, culminating with Hudson; shared its net profits; and shared responsibilities for ongoing expenses and debts. See In re S & D Foods, Inc., 144 B.R. at 158. ¶ 19 We acknowledge that mere common ownership of property does not itself establish a partnership. See § 7-60-107(1)(b), C.R.S. 2020; Brown v. Miller, 111 Colo. 327, 331, 141 P.2d 682, 684 (1943). But nor does common ownership prevent a partnership from existing. Indeed, “partnerships are often created in which a ‘silent’ partner contributes money, credit, or property,” and a partnership can be formed even if the partners are “not active in the 
8 day-to-day operation or management of the business.” In re Lamb, 36 B.R. 184, 189 (Bankr. E.D. Tenn. 1983). Where co-owners are actively involved in the management of a property — or delegate that work to an agent whose work they oversee — a partnership typically exists. See Vohland v. Sweet, 433 N.E.2d 860, 864 (Ind. Ct. App. 1982) (explaining that a “partnership may be formed by the furnishing of skill and labor by others”); Matlins v. Sargent, No. 86 CIV. 0370 (MJL), 1991 WL 79219, at *5 (S.D.N.Y. May 7, 1991) (unpublished opinion) (finding that a co-owner of a business was a partner partly because he “had a voice in the management” of a business). ¶ 20 Therefore, we agree with the district court and determine that a partnership existed. B. Standing ¶ 21 Having determined that a partnership existed between GSI, Saurini, and Erskine, the question of GSI’s standing is straightforward. In a case with similar facts, a division of this court determined that minority members of a partnership did not have standing to bring an action either on behalf of the partnership or in an individual capacity. See Adams, 194 P.3d at 432-33. We agree 
9 with the analysis in Adams, and therefore hold that, because a majority of the ownership interest in the partnership did not authorize GSI’s lawsuit, GSI does not have standing to assert its claim either on behalf of the partnership or an individual capacity. ¶ 22 For a member of a partnership to have standing to sue in an individual capacity, that member must suffer unique losses not shared by the other partners. Id. at 433. If no unique losses exist, “claims for redress belong to the partnership and cannot be asserted by a partner in his or her individual capacity.” Id.2 GSI does not claim that its losses were unique. Therefore, we conclude that the district court did not err by concluding that GSI did not have standing to sue in its individual capacity. 2 In its reply brief, GSI cites C.R.C.P. 17(a) and two cases (Monks v. Hemphill, 121 Colo. 1, 3, 212 P.2d 1004, 1005 (1949), and Erickson v. Oberlohr, 749 P.2d 996, 1000 (Colo. App. 1987)) in support of the proposition that it can sue Hudson in an individual capacity to recover damages based on a diminution in the value of its share of the property. We decline to address this argument because it was raised for the first time in the reply brief, and, therefore, it is not properly before us. Flagstaff Enters. Constr. Inc. v. Snow, 908 P.2d 1183, 1185 (Colo. App. 1995). In any event, we are not persuaded by either case, especially when we consider them in light of Adams v. Land Services, Inc., 194 P.3d 429 (Colo. App. 2008), which is directly on point. 
10 V. Conclusion ¶ 23 The order is affirmed. JUDGE NAVARRO and JUDGE PAWAR concur.