# IN THE COURT OF APPEALS OF IOWA

No. 22-1601
Filed January 24, 2024

**HUNTER THREE FARMS, LLC,**
    Plaintiff-Appellant,

**vs.**

**RICHARD HUNTER, individually and as member of Hunter Three Farms, LLC,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Greene County, Derek Johnson, Judge.

An LLC appeals from a district court ruling finding the LLC lacked standing to file a lawsuit against a member. **REVERSED AND REMANDED.**

Bradley M. Strouse and Adam J. Babinat of Redfern, Mason, Larsen & Moore, P.L.C., Cedar Falls, for appellant.

Justine E. LaVan and Benjamin J. Kenkel of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by Bower, C.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Hunter Three Farms, an Iowa limited liability company (LLC), appeals from a district court ruling that granted summary judgment in favor of Richard Hunter, one of the company's three member-managers. The district court concluded Hunter Three Farms lacked standing to sue Richard because filing a lawsuit required unanimous consent of all member-managers and Richard did not consent to being sued. On appeal, we analyze the relevant statutory language and conclude an LLC may sue one of its member-managers under exceptional circumstances if all disinterested members authorize litigation. We reverse and remand for further proceedings consistent with this opinion.

## I.      Background Facts and Proceedings

Richard, Robert, and Gary Hunter are brothers who have farmed in several Iowa counties for decades. Until 2016, the brothers had a general partnership farming operation, Hunter Farms, which they converted to a limited partnership, Hunter Three Farms, LP. As part of a global settlement among the brothers and their various business entities, structural changes were made to the business. One of those changes was that the "Hunter Farms" partnership was converted into Hunter Three Farms, LLC. We'll refer to Hunter Three Farms, LLC, which is the entity party to this appeal, as "the LLC" to distinguish it from the other similarly named entities.

The LLC has three voting members: Richard, the Robert P. Hunter Revocable Trust, and the Gary G. Hunter Revocable Trust. Each voting member controls one-third of the voting interest. Hunter of Iowa, Inc., an Iowa corporation in which all three brothers were shareholders, also holds a non-voting interest.

The brothers formed the LLC without an operating agreement. Shortly after formation, the LLC filed a five-paragraph statement of authority, executed only by Robert Hunter as organizer. The first paragraph established a mailing address, the second included the legal description of certain real estate, the third restricted the sale or mortgage of that real estate at certain price points, and the fifth established the entity's principal address. Pertinent to this appeal, the fourth paragraph provided: "A majority of the voting membership interests are authorized to make ordinary business decisions. All other decisions, including any change to this statement of authority, will require the consent of all members." The statement of authority did not define "ordinary business decisions."

The record includes limited information about the LLC's business activities. It is undisputed that the LLC or its tenants farmed the parcels of real estate specified in the statement of authority. Gary testified he and Robert met "whenever a decision needs done" because they had a majority interest, while Richard received information but did not participate in decision-making. Gary characterized his and Robert's decision-making as concerning the farm tenants, income, expenses, bills, and grain. An employee testified to filing reports with the federal government concerning crop acres planted, and there is some evidence the company owns mineral rights.

On one occasion, the LLC's members separately signed a written resolution granting unanimous consent for each member to receive monthly bank statements from the LLC's accounts. But beyond that, the record does not disclose if there was ever a formal or informal business meeting between all three LLC members.

In 2018, Richard submitted an application to a claims-administration program intended to compensate buyers of certain corn seeds from Syngenta. He did not tell the other members of the LLC that the program existed or that he was making a claim. He listed "Hunter Farms" (the general partnership that preceded the LP that preceded the LLC) as the producer and used his personal address (different from the LLC's address) on the claim form. But he used the LLC's tax identification number and signed a form indicating:

> I declare that I am the Producer (or Representative Claimant) entitled and/or authorized to make claims for the bushels listed in this Claim Form, and that no other person or entity has made claims for my share in the bushels listed in this Claim Form to the best of my knowledge. If the Producer is a business or other legal entity, I certify that I am authorized to act on behalf of the Producer submitting this Claim Form.

Richard received a $62,467.01 settlement payment from the claim. He deposited the payment in a bank account that he owned or operated, under the name of "Hunter Iowa Farms, Inc." The LLC did not own or have access to that account. The settlement program issued a 1099-MISC to the LLC's tax identification number, not Richard's social security number or his Hunter Iowa Farms tax identification number.

The LLC's other members found out about Richard's settlement payment when they learned the LLC had to pay tax on the income. Robert and Gary then sent Richard a letter by certified mail asserting the settlement payment belonged to the LLC. That letter demanded Richard deposit the proceeds in the LLC's bank account or divide the proceeds three ways and pay the cost of any potential tax consequences. Richard responded that he only applied for his third of the settlement payment and disclaimed any wrongdoing.

After that response, Robert and Gary met and decided the LLC would file a lawsuit. The LLC brought four claims against Richard personally and in his capacity as a member of the LLC: breach of fiduciary duty, breach of the duty of good faith and fair dealing, conversion, and unjust enrichment. Richard answered and denied the claims, and then filed a motion for summary judgment urging, among other grounds, that the LLC lacked standing to bring suit against one of its members because suing a member-manager was not an ordinary business activity and thus would require a unanimous vote of the member-managers, including the potential defendant.

After hearing arguments from the parties, the district court granted Richard's motion for summary judgment. The court found that the LLC did "not have standing" because the lawsuit was "not within the scope of [the LLC's] ordinary course of business and [the LLC] needed consent of all members to file this action." Based on this finding, the court declined to reach the merits. The LLC appeals.

## II. Standard of Review

We review the grant or denial of summary judgment for correction of errors at law. *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019) (citation omitted) (alteration in original). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

Evidence "is viewed in the light most favorable to the nonmoving party," but "the nonmoving party may not rest upon the mere allegations of his pleading [and] must set forth specific facts showing the existence of a genuine issue for trial."

*Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005). "Speculation is not sufficient to generate a genuine issue of fact." *Id.* at 96.

"Summary judgment is not a dress rehearsal or practice run; 'it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Slaughter*, 925 N.W.2d at 808 (alteration in original) (citation omitted).

## III. Discussion

On appeal, the parties battle over whether Richard had an effective veto over the suit against him, based on his position that an LLC may not sue a member-manager without unanimous consent—including from the potential defendant. Gary and Robert urge that the unanimous vote of all disinterested member-managers (them) was adequate authorization. Before turning to the merits of that question, we address two preliminary matters. First, we resolve a debate between the parties over whether their dispute concerns standing or authority. Second, we address the possibility this case could have been filed as a derivative suit and whether that matters to our ultimate analysis. Then, we address the merits and consider whether Iowa's LLC chapter authorizes direct suit against member-managers, and, if so, what voting interest is required to approve litigation. For the reasons that follow, we hold Robert and Gary (as the unanimous disinterested members) lawfully authorized the suit against Richard, and we reverse the district court's summary-judgment ruling and remand for further proceedings.

### A. Standing or Authority

The district court characterized the legal issue before it as one of standing, citing *Iowa Citizens for Community Improvement v. State*, 962 N.W.2d 780

(Iowa 2021). In that case, our supreme court found the citizens' claimed injury was too speculative to support standing to sue the State regarding alleged water pollution. *Id.* at 793–94. Richard adopts that position on appeal. Meanwhile, Robert and Gary argue the issue is really one of "authority," in the sense of whether the LLC is authorized to bring this suit absent the unanimous support of its members. We find that "authority" is the better label for this discussion, as it concerns the LLC's internal decision-making. In any event, we doubt the terminology used affects our analysis.

### B. The Possibility of a Derivative Suit

As a preliminary hurdle, Richard argues we need not address the merits because Robert and Gary could have and should have filed a derivative action instead. The commentary correctly recognizes "[t]here are few Iowa decisions addressing a limited liability company member's right to sue derivatively." *See* 6 Matthew Doré, *Iowa Practice Series: Business Organizations* § 39:7 (West 2023). And no Iowa cases answer the question presented here.

As a general proposition, the premise of a derivative action is that a minority interest-holder may demand the disinterested managers act in the entity's best interest, and then sue on behalf of the entity if they do not. *See* Iowa Code § 489.902(1) (2021); *cf. Guge v. Kassel Enters., Inc.*, 962 N.W.2d 764, 774 (Iowa 2021) ("In a derivative action, a shareholder asserts on the corporation's behalf a claim against a third party (the 'third party' often being one of the corporation's own corporate officers) when the corporation itself fails to take action against the third party."). But here, Robert and Gary constitute a super-majority, not a minority. They *are* the disinterested managers and *did* agree to have the

company bring the enforcement action. Just as a factual matter, forcing this to proceed as a derivative suit adds unnecessary complexity and is like forcing a square peg into a round hole.

Setting aside these compatibility problems, even if a derivative suit was an available remedy for Robert and Gary, that does not mean it is the exclusive remedy. In our review of the LLC chapter, there is no indication a derivative suit was intended to be the sole mechanism by which claims of corruption or self-dealing by LLC members may be litigated. If the General Assembly had intended the availability of an LLC derivative action to prohibit any other remedy for enforcing claims against members, it certainly knew how to say so. *See, e.g.*, Iowa Code §§ 384.88 ("The *sole remedy* for a breach or default of a term of a revenue bond or pledge order is . . . ." (emphasis added)), 486A.504(5) ("This section provides the *exclusive remedy* by which a judgment creditor of a partner or partner's transferee may satisfy a judgment . . . ." (emphasis added)), 637.614 ("Such person's *exclusive remedy* shall be . . . ." (emphasis added)). Instead, the legislature specifically preserved the LLC's power to sue in its own name. *Id.* § 489.105(1). In other words, the text of the LLC statute does not prohibit non-derivative remedies and, as we confirm below, the statutory scheme authorizes suits in the name of the entity.

Even if—contrary to the legislative text—we found the General Assembly may have intended Robert and Gary's claims to be filed by derivative suit, their claims and the facts surrounding this litigation would fulfill the relevant procedural requirements. The only pertinent prerequisite for a derivative suit is that the minority shareholders make a demand for action or prove that such a demand

would be futile. *Id.* § 489.902. Here, that requirement would be satisfied either through the failure of Richard to approve litigation upon written demand or because demanding Richard sue himself was futile, as evidenced by his written response to the demand. Because the procedural requirements of a derivative suit were met, to break new ground in our case law and hold Robert and Gary's claims must be dismissed and re-filed as a derivative suit serves no useful purpose; requiring them to re-file for no good reason would instead delay, impede, or thwart substantial justice. We offer no opinion on whether this action could have also been brought as a derivative suit, but we hold the theoretical availability of a derivative action does not preclude a direct suit brought by the LLC itself, as was done here.

### C. The Merits

Moving beyond the preliminary questions, we must answer whether the direct suit brought by the LLC was properly authorized.

Iowa Code chapter 489 establishes and regulates LLCs. The chapter provides an LLC can govern relations among members and otherwise structure operations by adopting an "operating agreement." *Id.* § 489.110. In the absence of an operating agreement, the chapter's default provisions govern relations between the LLC's members. *Id.* § 489.110(2).

The LLC in this case did not have an operating agreement, but a statement of authority was signed by the LLC's organizer and filed with the secretary of state about two weeks after the LLC was formed. Neither party has briefed whether a statement of authority signed solely by the organizer is legally valid, so we assume without deciding it is for purposes of our analysis.

Richard puts considerable weight on the statement of authority. He argues it conclusively defines the express authority granted to member-managers of the LLC. But we think this overstates the document's role. "A statement of authority affects only the power of a person to bind a limited liability company to persons that are not members." *Id.* § 489.302(3). In other words, a statement of authority is not intended to regulate the internal decision-making of an LLC; it is intended to tell non-member third parties what kind of authority each member has, for purposes of those third-party interactions. *See id.* This is confirmed by the statement's fourth paragraph, which more or less re-states and applies the general rules for member-managed LLCs established in chapter 489. *See id.* § 489.407(1)(c)–(d). In any event, the statement-of-authority argument put forward by Richard is a bit of a sideshow to the real issue, which we find is a question of statutory interpretation.

In applying Iowa statutes, the supreme court has directed us to first search for plain meaning, then resort to the tools of statutory construction if we find ambiguity:

> In interpreting a statute, we first consider the plain meaning of the relevant language, read in the context of the entire statute, to determine whether there is ambiguity. If there is no ambiguity, we apply that plain meaning. Otherwise, we may resort to other tools of statutory interpretation.

*State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017) (internal citations omitted). In our view, the plain meaning of the statute is dispositive and requires reversal. But even if we deploy the tools of statutory construction, we come to the same conclusion. In light of the dearth of Iowa LLC case law, we engage in both analyses.

### 1. Plain Meaning in the Context of Chapter 489

The LLC chapter provides that "a limited liability company has the capacity to sue and be sued in its own name and the power to do all things necessary or convenient to carry on its activities." Iowa Code § 489.105(1). This grant of authority is express, without exception, and overrides any internal agreements adopted by an LLC. *See id.* § 489.110(3)(a). The terms in section 489.105(1) have obvious meaning that do not require us to look outside ordinary usage to divine their definition. In this context, "capacity" and the slightly more term-of-art "capacity to sue" both mean

> The power to create or enter into a legal relation under the same circumstances in which a normal person would have the power to create or enter into such a relation; specif., the satisfaction of a legal qualification, such as legal age or soundness of mind, that determines one's ability to sue or be sued, to enter into a binding contract, and the like <she had full capacity to bind the corporation with her signature>.

*Capacity*, Black's Law Dictionary (11th ed. 2019) (second definition). "In its own name" means what it sounds like: the LLC can sue directly, as the captioned plaintiff.

Even when guided by a provision's plain meaning, "we read statutes as a whole rather than looking at words and phrases in isolation." *Iowa Ins. Inst. V. Core Grp. Of Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015); *accord Doe*, 903 N.W.2d at 351 ("[W]e first consider the plain meaning of the relevant language, *read in the context of the entire statute* . . . ." (emphasis added)). Looking to the broader statutory framework of chapter 489, we see the General Assembly expressly contemplated direct suits by the LLC against member-managers for breach of fiduciary duties and taking unlawful distributions. *See* Iowa Code

§§ 489.409(5) ("It is a defense to a claim [of dealing with the company as or on behalf of an adverse-interest party], and any comparable claim in equity or at common law that the transaction was fair to the limited liability company."), 489.406(1)–(4) (providing that a member-manager taking improper distributions is "personally liable to the company" and recognizing "an action" may be "commenced" against such member-manager). These provisions are inconsistent, if not irreconcilable, with Richard's reading of the statute: that an LLC cannot sue one of its member-managers absent unanimity, which practicably means an LLC cannot ever sue a member-manager because the defendant-manager is unlikely-to-never going to agree to be sued. Adopting Richard's position would render the provisions authorizing suit by the LLC against member-managers superfluous or null, and this we cannot do. *See Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981) ("[A] statute should not be construed so as to make any part of it superfluous unless no other construction is reasonably possible.").

We conclude the plain meaning of the statutory scheme authorizes the LLC to sue one of its member-managers for breach of fiduciary duties and related claims without requiring unanimous consent. Because the district court dismissed the petition on the premise that unanimity was required but not obtained, it erred in granting summary judgment.

### 2.    Statutory Construction

To the extent there is any ambiguity in the statutory provisions at issue in this appeal, and to further explain why the plain meaning of the statute is consistent with legislative intent, we consider whether principles of statutory construction also

support finding an LLC can bring suit against one of its members absent unanimous consent. We find statutory construction leads us to the same answer and similarly requires us to reject Richard's rule that functionally immunizes member-managers from direct suit by an LLC.

Our goal in "statutory construction is to determine legislative intent." *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 455 (Iowa 2014) (citation omitted). "[L]egislative intent is derived not only from the language used but also from the statute's subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations." *Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 137 (Iowa 2010) (internal quotation marks and citation omitted). The General Assembly has likewise directed us to consider "[t]he consequences of a particular construction" when construing statutes enacted by the elected branches. *See* Iowa Code § 4.6(5).

In considering whether unanimity should be required to bring suit against an allegedly malfeasant member-manager, the practical consequence we must consider is the impact of granting effectively unreviewable veto power to every LLC member-manager who engages in misconduct and would prefer not to be directly sued by the injured entity. The unanimity requirement, taken to its logical extreme, would mean that an embezzling LLC member-manager who controls only 1% of the voting interests would be immune from direct suit, despite agreement by the other 99% of interest-holders that litigation is "necessary or convenient to carry on [the LLC's] activities." *Id.* § 489.105(1). We are hard-pressed to think this unreviewable veto was intended by the General Assembly. The only interpretation

of chapter 489 consistent with our understanding of legislative intent is the one we think is also compelled by the plain language: an LLC must have an effective direct remedy against malfeasance committed by one of its member-managers, so something less than unanimity is required to sue—at least under some circumstances. The district court erred in concluding otherwise.

### 3. The Threshold Required to Authorize Litigation

Convinced that both the plain language of the statute and legislative intent lead us to conclude unanimity is not required for direct litigation against malfeasant member-managers, we are left to decide what portion of voting interests is necessary to authorize litigation. We find an answer in both the language of the statute and longstanding principles of partnership law, which we use to "supplement" the text of chapter 489 as directed by the General Assembly. *See id.* §§ 489.107 ("Unless displaced by particular provisions . . . , the principles of law and equity supplement this chapter."), 4.6(4) ("If a statute is ambiguous, the court, in determining the intention of the legislature, may consider . . . [t]he common law or former statutory provisions, including laws upon the same or similar subjects.").

The LLC chapter provides that "[a] difference arising among members as to a matter in the ordinary course of the activities of the company may be decided by a majority of the members." *Id.* § 489.407(2)(c). But "[a]n act outside the ordinary course of the activities of the company, including selling, leasing, exchanging, or otherwise disposing of all, or substantially all, of the company's property, with or without the goodwill, may be undertaken only with the consent of all members." *Id.* § 489.407(2)(d). In other words, whether a majority vote or unanimity is generally

required under the statute turns on whether the particular act at issue falls inside or outside the company's ordinary course of activities. *Id.* § 489.407(2)(c)–(d).

Robert and Gary argue we should apply the ordinary-course-of-activities analysis and hold their lawsuit was permitted because they constitute a majority interest, while Richard asserts a suit against a member is extraordinary and requires unanimous consent. We therefore explore what it means for a business activity to be "ordinary."

According to our supreme court, "'ordinary course of business' is a widely understood term." *Comm. on Pro. Ethics & Conduct v. McCullough*, 465 N.W.2d 878, 886 (Iowa 1991). The term refers to "[t]he normal routine in managing a trade or business." *Course of Business*, Black's Law Dictionary 443 (11th ed. 2019). The secondary sources give slightly more context:

> The legal term of art "ordinary course" of business, in a statute governing the managers and members of a limited liability company as agents of the company, when describing the powers of the members, is intended to encompass transactions that are part of the normal or customary routine, even if only occasional, of the commercial world generally, or of businesses of the same kind, or of a particular business. Whether any particular transaction is in the ordinary course of business is necessarily a fact-intensive inquiry that will turn on the nature of the transaction and the broader context in which the transaction occurred.

54 C.J.S. *Limited Liability Companies* § 12 (2023) (footnotes omitted).

In his treatise, Professor Emeritus Matthew Doré observes that, "[b]ecause these [LLC] statutory standards are nearly identical to those that apply under partnership law, courts may find partnership precedents to be helpful." 5 Matthew Doré, *Iowa Practice Series: Business Organizations* § 13:18 (West 2023); *see also Elf Atochem N.A., Inc. v. Jaffari*, 727 A.2d 286, 290 (Del. 1999) (comparing

members of an LLC to a limited partnership). This observation is particularly apt here, as the LLC at issue is a converted partnership, and there is no evidence its members intended to function more like a corporation than a partnership after converting to an LLC. We also find the suggestion that we look toward partnership law is encouraged by the statute, which tells us to "supplement" the statutory provisions with "principles of law and equity" on matters not expressly addressed. *See* Iowa Code § 489.107; *see also id.* § 4.6(4).

Cases across the country generally hold that, when it comes to partnerships and LLCs, acts outside the ordinary business include significant structural acts like changing the structure of the business entity or functionally terminating the ordinary business. *See, e.g.*, *Sterling Crest, Ltd. v. Blue Rock Partners Realty Grp., LLC*, 164 So. 3d 1273, 1279 (Fla. Dist. Ct. App. 2015) (sale of partnership's sole asset not in the ordinary course by statute); *In re Loverin Ranch*, 492 B.R. 545, 548 (Bankr. D. Or. 2013) ("Filing a voluntary bankruptcy case is a paradigm action outside the ordinary course of partnership business."); *In re Est. of Caruso*, 176 A.3d 346, 351 (Pa. Super. Ct. 2017) (merger is outside the ordinary course). This is consistent with the examples given in the Iowa LLC statute of acts requiring unanimous consent—"selling, leasing, exchanging, or otherwise disposing of all, or substantially all, of the company's property." Iowa Code § 489.407(2)(d). Understandably, given the wide array of potential business ventures, there is no comparable laundry list for acts that fall within—rather than outside of—the ordinary course of business. But we think it unlikely any reasonable list would omit enforcing a member's fiduciary duties and claiming company property.

In surveying national partnership and LLC case law, we find the more convincing authorities support that a partnership or LLC is authorized to bring a direct action against a partner or member-manager whenever all the disinterested partners or member-managers vote to sue. For example, a Connecticut case recognized that, in "exceptional circumstances" such as alleging "bad faith, self-dealing, waste and misappropriation of partnership income and assets," a general partner may disregard the unanimity requirement. *Jackson Enters. v. Jackson*, No. FBTCV186070521S, 2018 WL 7822093, at *5 (Conn. Super. Ct. July 25, 2018). A reported Maryland decision, interpreting a provision analogous to our section 489.407(2)(d), determined the unanimity required by statute must be "tempered when non-plaintiff partners have conflicts of interest" and "should not apply to defendant partners," meaning suit can be authorized "by all of the *disinterested*" members or partners. *George Wasserman & Janice Wasserman Goldsten Fam. LLC v. Kay*, 14 A.3d 1193, 1216 (Md. Ct. Spec. App. 2011), *abrogated on other grounds by Plank v. Cherneski*, 231 A.3d 436, 464–65 (Md. 2020).

These cases follow a long trend in partnership case law that pre-dates modern LLCs, in which courts recognize something less than unanimity—and sometimes less than a majority—is required to bring suit on behalf of a partnership when another partner is the potential defendant. *See, e.g.*, *Brcka v. Falcon Elec. Corp.*, No. C8-00-1434, 2001 WL 641524, at *8 (Minn. Ct. App. June 12, 2001) (requiring less than a majority for suit by partnership against partner alleging "the nonconsenting partners have conspired, acted in bad faith, and declined to sue on a valid, valuable partnership cause of action"); *Cates v. Int'l Tel. & Tel. Corp.*, 756

F.2d 1161, 1178 (5th Cir. 1985) (interpreting Texas law and finding that a remedy must be available when "controlling partners, for improper, ulterior motives . . . decline to sue on a valid, valuable partnership cause of action which it is advantageous to the partnership to pursue"); *Serpa v. Jolly King Rests., Inc.*, 62 F.R.D. 626, 634–35 (S.D. Cal. 1974) (requiring less than a majority to sue in the name of the partnership when non-consenting partner is alleged to have engaged in fraud or other misconduct); *Riviera Cong. Assocs. v. Yassky*, 223 N.E.2d 876, 879 (N.Y. 1966) (requiring less than unanimity for suit "when those in control of the business wrongfully decline" to act); *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 299 (2d Cir. 1965) (permitting limited partners to bring a suit on behalf of dissolved partnership when general partners assigned their management interest to a conflicted trustee). A respected authority on partnerships echoes these points, noting a single partner may be able to litigate a partnership claim non-derivatively under exceptional circumstances and with the consent of all disinterested partners. *See* Alan R. Bromberg, *Enforcement of Partnership Rights—Who Sues For The Partnership?*, 70 Neb. L. Rev. 1, 14, 18–19 (1991).

We recognize a few cases have come out the other way. *See, e.g.*, *Crouse v. Mineo*, 658 S.E.2d 33, 37–38 (N.C. Ct. App. 2008); *Vecchitto v. Vecchitto*, No. CV084008482, 2008 WL 4210784, at *3 (Conn. Super. Ct. Aug. 26, 2008). We have given these cases careful consideration but find the other precedent more persuasive. And we are troubled that the cases requiring unanimity for an LLC to sue a malfeasant member provide no explanation for why our legislature would intentionally immunize corrupt acts by a member-manager from direct suit. The

lack of answer to that question is particularly damning to those cases' rationales when a for-profit corporation's board—which intentionally includes more formalities and affords more protections to its managers than an LLC—is permitted to authorize all acts by majority of its disinterested directors or shareholders. Iowa Code §§ 490.862–.863.

This disinterested-members principle is addressed by statute for a broad array of other entities, convincing us all the more it is appropriately applied to an LLC. *See id.* §§ 331.302(14) (requiring "majority" or "unanimous" votes to be calculated on the basis of "the number of supervisors not disqualified by reason of conflict of interest" for county boards of supervisors), 362.6 (similar provision for non-legislative city acts), 380.4 (same for city legislation considered by city), 501A.713 (similar provision for cooperative associations), 504.833 (similar provision for non-profit corporations).

Applying the "principles of law and equity," as we must pursuant to section 489.107, and considering the significant weight of authority from other jurisdictions, we hold an LLC may bring direct litigation against a member-manager under exceptional circumstances with the consent of all disinterested member-managers. We leave for another day whether something less than *all* disinterested members may be sufficient to file suit and the precise parameters of what constitutes exceptional circumstances.

In looking to apply the rule to this case, we find the circumstances presented here are exceptional: the allegation against Richard is that he acted with improper or ulterior motives and not in good faith, converting company property to his personal use and unjustly enriching himself with it absent any indication he was

acting in the company's interest. *Cf. Adams v. Land Servs., Inc.*, 194 P.3d 429, 432 (Colo. App. 2008) (finding no exceptional circumstances when "the record disclose[d] no basis for concluding that the decision to enter into the challenged transactions . . . was anything other than a good faith business decision" by the defendant-partner). We also find the disinterested member-managers (Robert and Gary) unanimously authorized litigation. As a result, the district court erred in dismissing the petition.

## IV.     Disposition

We reverse the district court's dismissal of the petition and remand for further proceedings consistent with this opinion.

## REVERSED AND REMANDED.

Bower, C.J., concurs; Langholz, J., dissents.

**LANGHOLZ, Judge** (dissenting).

By default, under Iowa's statute governing LLCs, "[a]n act outside the ordinary course of the activities of the company . . . may be undertaken only with the consent of all members." Iowa Code § 489.407(2)(d) (2021). So if an LLC has three members and has not altered this default rule, how many members must consent to the LLC taking the extraordinary action of suing one of its members? Not three, says the majority. The majority concludes that "under exceptional circumstances," only the consent of all *disinterested* members is needed. And thus it allows this suit by an LLC—authorized by only two of its members—to proceed against the third member. Because I would stick with the text of the statute rather than marking it up with an exception of our own creation, I respectfully dissent.

I.

I agree with the majority that we should start with the text of the statute. *See Goche v. WMG, L.C.*, 970 N.W.2d 860, 863 (Iowa 2022). And indeed, the context of the entire statutory scheme can help us understand a particular provision because we do not interpret statutes in isolation. *See Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020). But we need to be sure we start with the right statute—the one that governs the conduct at issue. And for deciding the dispute here—who controls whether an LLC can sue one of its members—that statute is section 489.407(2).

Section 489.407(2), a part of Iowa's Revised Uniform Limited Liability Company Act, sets the default rules of governance for LLCs. These rules can be varied by an LLC's operating agreement. *See* Iowa Code § 489.110. But I agree with the majority that the members of this LLC did not make any relevant variations

from the statute.[1]  So under the default rules for member-managed LLCs like this one, "[e]ach member has equal rights in the management and conduct of the company's activities."  Iowa Code § 489.407(2)(b).  And if a dispute arises "as to a matter in the ordinary course of the activities of the company," it is "decided by a majority of the members."  *Id.* § 489.407(2)(c).  But for "[a]n act outside the ordinary course of the activities of the company," the LLC may act "only with the consent of all members."  *Id.* § 489.407(2)(d).

Applying this framework, a suit by an LLC against one of its members is outside the ordinary course of its activities.  And so it requires "the consent of all members."  *Id.*  The majority eventually conducts a thoughtful analysis, with which I agree, as to why such a suit is not within an LLC's ordinary course of business.  So I need not rehash it here.  But instead of following its reasoning to the logical conclusion mandated by the statute, the majority lands outside the text.  It concludes that only the consent of all disinterested members—rather than "all members," *id.* § 489.407(2)(d)—is required because these are, as the majority puts it, "exceptional circumstances."

Perhaps the majority goes astray because it fails to begin with section 489.407(2).  Instead, it first looks to section 489.105(1), which merely authorizes

---

[1] It matters not whether the statement of authority could also be considered the LLC's operating agreement or otherwise effective to modify the default governance rules.  *See* Iowa Code § 489.102(15) (defining an "operating agreement" to include an agreement "of all the members" of the LLC "concerning the matters" it is supposed to cover "whether or not referred to as an operating agreement and whether oral, in a record, implied, or in any combination thereof").  Even if it could, the statement of authority's governance provision—requiring "[a] majority of the voting membership interests . . . to make ordinary business decisions" and "the consent of all members" for "[a]ll other decisions"—does not vary from the default statutory rule in any way relevant to this appeal.

LLCs to sue and be sued. *See* Iowa Code § 489.105(1) ("[An LLC] has the capacity to sue and be sued in its own name and the power to do all things necessary or convenient to carry on its activities."). And then it turns to a few provisions that create causes of action an LLC can bring against one of its members. *See id.* § 489.406 (for consenting to improper distributions); *id.* § 489.409 (for breaching fiduciary duties of loyalty or care).

But these statutes do not answer any question raised in this appeal. No one questions that an LLC can sue. Or that such a suit could be brought against one of its members. These statutes address the LLC's powers—telling us *what* an LLC can do. But they do not speak to *how* an LLC can decide whether to exercise one of its powers.

This governance question—the structuring of the LLC's brain rather than its muscle—is addressed in section 489.407(2). Because governance is covered in detail there, it matters not that the code does not restate the governance rules again and again in individual provisions on the many powers of the LLC. So unlike the majority, I read nothing into the lack of exception in the grant of authority to sue in section 489.105(1). As to governance, section 489.407(2) is the more specific, controlling provision covering how to resolve disputes among members about an LLC's activities. *See* Iowa Code § 4.7; *State v. Hess*, 983 N.W.2d 279, 287 (Iowa 2022). And if the "express, without exception" grant of authority to sue really had the force the majority implies to trump section 489.407(2), then where would we find some rule or law to govern when that power can be exercised? Surely, the LLC does not have the power to do so, as if some self-piloting drone, whenever it manages to land a petition in our electronic-filing system.

Neither does following the text of section 489.407(2) render these other provisions "superfluous or null," as suggested by the majority. True, requiring unanimous consent means that a dissenting member could prevent the LLC from suing directly. But that is a feature—not a bug—of the statute's default governance rules. And if the members of an LLC want to avoid that possibility, they could adjust the governance structure in the LLC's operating agreement to set a different threshold. *See* Iowa Code § 489.110. Indeed, an LLC's members could even adopt the disinterested-member rule created by the majority if they wanted to do so.

That's not all. The statutes creating a cause of action for the LLC can also be used, even without a varied governance structure, as a basis for bringing a derivative suit on behalf of the LLC. *See id.* §§ 489.902–.906. A derivative suit seeks "to enforce a right of a limited liability company." *Id.* § 489.902. So statutes that create rights for the LLC, like those that the majority claims would be nullities if the direct suit could be blocked, are necessary for those rights to be enforced derivatively too. Serving such a vital role is hardly "superfluous or null."

The majority also seeks support for its disinterested-member standard from other statutes that expressly limit the computation of majority or unanimous voting requirements to disinterested voters. *See, e.g.,* Iowa Code § 331.302 (county supervisors); *id.* § 362.6 (members of municipal bodies); *id.* § 504.833 (members and directors of nonprofit corporations). But these statutes cut against implying such a standard into the LLC statute. They show that the legislature knows how to write such a standard. *See Goche*, 970 N.W.2d at 864. Indeed, the legislature

has done so even in this statutory scheme.[2]  *See* Iowa Code § 489.110(5) (providing option for an LLC to permit "one or more disinterested and independent persons" to authorize or ratify activities "that would otherwise violate the duty of loyalty").  Yet the legislature did not do so here.  And "[t]hat omission is fatal to" the majority's interpretation.  *Goche*, 970 N.W.2d at 864.

We must interpret and apply the text that the legislature did enact.  Thus, absent a contrary provision in an LLC's operating agreement, "[a]n act outside the ordinary course of the activities of the company . . . may be undertaken only with the consent of all members."  Iowa Code § 489.407(2)(d).  Filing this suit is such an act.  Hunter Three Farms, LLC, had the consent of only two—not all—of its members.  And so, the district court correctly dismissed this suit.

## II.

Having fully considered the text and context of the governing statute, I would stop there.  But the majority continues to seek support for its disinterested-member standard beyond the statute, beyond LLC law, and beyond Iowa.  I do not find this tour beyond particularly instructive.  And I do not pretend to offer a comprehensive alternative itinerary.  But to avoid leaving an incomplete impression of the legal landscape, it may help to explore a few of the majority's destinations a bit further.

---

[2] The LLC statutory scheme also shows that the legislature knows how to lock in a particular consent threshold with express text in a statute governing a specific power.  *See, e.g.*, Iowa Code § 489.407(3)(e) (requiring the consent of a majority of members to select or remove manager); *id.* § 489.602(4) (requiring unanimous consent to expel member in some cases); *id.* § 489.1109 (requiring unanimous consent for the voluntary assignment of a member's interest in a professional LLC). The legislature did not do this in the statutes authorizing suits or creating the statutory causes of action relied on by the majority.  *See* Iowa Code §§ 489.105(1), .406, .409.  So this too undercuts the majority's reading of those statutes to somehow override section 489.407(2).

And I add one more must-see stop that seems to offer the best view of our statute from that surrounding terrain beyond its text.

The majority first—and almost exclusively—takes us to the law of partnerships. True, partnership law may sometimes help us understand our LLC statute. *See* 5 Matthew Doré, *Iowa Practice Series: Business Organizations* § 13:18 (West 2023). After all, an LLC is a hybrid between partnerships and corporations with features of both and its own unique hallmark of flexibility. *See id.* § 13:5; Larry E. Ribstein, *The Emergence of the Limited Liability Company*, 51 Bus. Law. 1, 2 (1995). So when a court interprets an LLC statutory provision analogous to a long-time partnership principle of law, it may make sense to rely on that underlying legal backdrop to understand the statute's meaning. But that's not this case.

The problem that the majority sees here—the potential unfairness of requiring unanimity for an LLC to sue one of those members who must consent—has already been addressed in the LLC statutory scheme with the authorization of derivative suits. A member—or even majority of members—that cannot obtain the required consent of all the members can bring a derivative suit "to enforce a right of a limited liability company." Iowa Code § 489.902. And the procedural requirements and safeguards of such suits can properly navigate the competing concerns to select those that should proceed and ensure that they do in fact benefit the LLC, not just the plaintiff suing.

We cannot forget that, unlike a partnership, an LLC is a statutory creation. And this part of the statute is taken from corporate law—not partnership law. Historically, under Iowa and "American partnership law generally" partners could

not bring a derivative suit. 5 Matthew Doré, *Iowa Practice Series: Business Organizations* § 39:6 (West 2023) ("There is no Iowa authority—either statutory or case law—that allows partners in a general partnership to bring derivative claims on behalf of the partnership."). The same is true under Iowa's current partnership statute.[3] *See id.*; *see also* Iowa Code ch. 486A. So it makes little sense to look to partnership law, which had to seek other answers to resolve this problem, when our statute expressly takes a different tack from a different body of law. *Cf. Barkalow v. Clark*, 959 N.W.2d 410, 418–19 (Iowa 2021) (looking to corporate law to interpret the new oppression remedy in the LLC statute, where that feature comes from that body of law); *see also* 5 Matthew Doré, *Iowa Practice Series: Business Organizations* § 13:33.

Looking closer at the leading case of *Cates v. International Telephone & Telegraph Corp.*, 756 F.2d 1161 (5th Cir. 1985)—which directly and indirectly underpins most of the majority's partnership analysis—reinforces how inapt this reliance on partnership law is.[4] There, the Fifth Circuit (merely predicting Texas partnership law) did not engraft a disinterested-partner standard onto a statute already addressing the issue. *See Cates*, 756 F.2d 1178–79. It did not adopt such a standard or even suggest it would be an appropriate remedy. *See id.* The court

---

[3] The later, fellow-statutory creation, the *limited* partnership, like the LLC, does permit derivative suits. *See* Iowa Code § 488.1002. But its standard for bringing suit is higher than for LLC because it includes a universal demand requirement without the futility exception included for LLCs. *Compare id.*, *with id.* § 489.902(2); *see also* Doré, *Iowa Practice Series: Business Organizations* § 39:17.

[4] Much of the commentary and cases cited by the majority rely on *Cates*. *See, e.g.*, Alan R. Bromberg, *Enforcement of Partnership Rights—Who Sues for the Partnership?*, 70 Neb. L. Rev. 1, 18–19 & nn. 84, 86–87, 89 (1991) (citing *Cates*, 756 F.2d at 1176); *George Wasserman & Janice Wasserman Goldsten Fam. LLC v. Kay*, 14 A.3d 1193, 1216–17 (Md. Ct. Spec. App. 2011) (same).

just held that "Texas law would afford *some* remedy to the minority partner or partnership interest owner *other than merely* a damage or accounting suit against the controlling partners, at least where the latter would not be reasonably effective to protect the substantial rights of the minority." *Id.* at 1178. And it noted three other possible remedies: a derivative suit, the appointment of a receiver, or a suit for the partner's fractional interest in the partnership's cause of action. *See id.* at 1178–79.

But here, there is no question that Iowa law affords "*some* remedy." *Id.* at 1178. Nor is there any work for us to do in the name of equity to select one of the remedies suggested by the court in *Cates.* The legislature has already done so by including a derivative action in the LLC statute. We need only abide by that choice.

All the out-of-state precedent cited favorably by the majority comes from partnership cases. The one case cited by the majority interpreting an LLC statute comes out the other way, enforcing the unanimity requirement of the statute. *See Crouse v. Mineo*, 658 S.E.2d 33, 37–38 (N.C. Ct. App. 2008). Yet the majority dismisses this case as "unpersuasive." The majority is "troubled" that this reading would "intentionally immunize corrupt acts by a member-manager from direct suit." But with the available remedy of a derivative action, meritorious claims are not immunized. And again, this is only the default rule. If the members of an LLC share the majority's concern, they can address it in the LLC's operating agreement.

So finally, as for that must-see vista of our statute, we must briefly start back with the statute itself. Recall that it is Iowa's Revised *Uniform* Limited Liability Company Act. *See* Iowa Code § 489.101*.* Like other uniform acts, it was developed by the Uniform Law Commission with expertise from around the

country.  *See King v. Smith*, No. 20-0137, 2021 WL 2453051, at *5 n.13 (Iowa Ct. App. June 16, 2021).  But the Uniform LLC Act is only one of two alternative model acts that were developed for states to consider enacting.  *See* Ribstein, 51 Bus. Law. at 23.  The other, which was developed by the American Bar Association, is known as the Prototype LLC Act.  *See id.*

One of the areas these two model acts differed is the handling of suits, like this one, where a member may be interested.  The uniform act, as already hammered home, adopted the derivative suit.  *See id.*  The Protoype LLC Act did not permit derivative actions and instead requires the approval of disinterested members—the very standard the majority now writes into our statute.  *See id.*  But Iowa did not enact the Prototype LLC Act.  Our legislature enacted the Uniform LLC Act, which took the alternative path.  *See* Iowa Code §§ 489.101, 902.  And thus, it is particularly inappropriate to go down the path not taken by our legislature in our interpretation of Iowa's LLC statute.  *See Goche*, 970 N.W.2d at 866 (interpreting another provision in Iowa's Revised Uniform Limited Liability Company Act and refusing to follow unenacted model statutory text because it is not a court's "role to rewrite the Iowa statute in the guise of interpretation").

But again, we need not go on this journey outside the text.  We find our answer at home in section 489.407(2)(d).  To undertake the extraordinary act of suing one of its members, Hunter Three Farms, LLC, must have "the consent of all members."  Iowa Code § 489.407(2)(d).  Richard Hunter, one of those members, did not give his consent to this suit.  I would thus affirm its dismissal by the district court.